Trudeau Sanatorium *v.* First Nat. Bank *et al.*

(In Banc.   Nov. 27, 1944.)

[19 So. (2d) 820.   No. 35707.]

**Dent, Robinson & Ward,** of Vicksburg, for appellant.

**Brunini & Brunini**, of Vicksburg, for appellees.

**Griffith, J.**, delivered the opinion of the court.

The testatrix owned a large estate in stocks and bonds which by her will she bequeathed to her husband and son,

in substance and form as hereinafter stated. Her husband is a banker and her son is a merchant, both of them having property and incomes of their own which place them far above any present necessity of recourse to anything left by the testatrix; and it is not for that reason that occasion has arisen for a construction of the will, but because some of the corporations in which the testatrix held stock have declined to enter transfer on their books until the right of the husband and son to have such transfers made has been defined by the court.

After having made by her will specific bequests of money in nine items amounting to $37,000, and in another item of all her jewelry, and in another of all her furniture and household effects and a devise to her son of all her real estate, the testatrix provided by Items 12, 13, and 14 as follows:

"Item 12: All the rest and residue of my estate of which I may die seized and possessed, I give, devise and bequeath unto my husband, C. L. Warner, and my son, Glover Warner, share and share alike.

"Item 13: All that part of my estate herein bequeathed and devised to my husband, C. L. Warner, capable of identification in its original or re-invested form, owned by him at the time of his death, I give, devise and bequeath unto my son, Glover Warner.

"Item 14: In the event my son, Glover Warner, shall have no issue living at the time of his death, all that part of my estate owned by him at the time of his death (except that part specifically bequeathed and devised to him), either in its original form, or capable of identification in its reinvested form, I give, devise and bequeath to the General Endowment Fund of the Trudeau Sanatorium, a corporation incorporated under the laws of the State of New York on March 4, 1889, and located at Saranac Lake, New York State."

It is the contention of the Sanatorium that by the quoted items the legatees were each vested with a life estate in the residuary property, with no right to put any

part of it to their personal use beyond the income, and that the corpus of the residuary estate, with all increment, must be preserved for transmission to the Sanatorium in the event the son should die without issue surviving, and that any transfer or successive transfers of the stock should be in such form as to make the transactions readily traceable back to the original estate and that such records thereof be kept as will at all times protect the rights of the Sanatorium as the ultimate remainderman.

The legatees have argued that the interests in the residuary estates bequeathed to them are analogous to estates in fee simple determinable by the failure of surviving issue, which, as they contend, would give them prior to the death of the son, the same right of ownership and control over the stock, including the unfettered right to have transfers made and to make transfers, as if they were owners in fee simple absolute, and they say that coupled with this posture of their estate in the residuary property, they have the further right to take and use for their personal benefit such part of the corpus as the course of the future might make necessary. They say that the terms ''owned by him at the time of his death, either in its original form or capable of identification in its reinvested form,'' do not mean that the corpus of the estate must be preserved, and this at all events, either in its original form or in some form capable of identification, but that the ultimate taker is to have that, and that only, which the legatees actually own either in its original or derivative form, each at the time of his death.

We do not think it would be helpful to dwell upon the technical niceties with which the parties have embellished their arguments. We prefer to proceed directly to the language of the will, and so doing it will be at once observed that the residuary legatees are given the right and power of reinvestment. With this goes by implication the right and power to do and to have done whatever is necessary or proper to carry the process of reinvestment

into execution. Thus, there is the right in the legatees to have the stock transferred to them and the power to make transfers which will confer upon the transferees the fee simple title absolute, and this without any qualification in form which might impede or embarrass or depreciate the transfer or reinvestment.

What is contained in the foregoing paragraph would be all that is necessary to say had the decree under review dealt only with the point, but it went further and prescribed the use to which the legatees could put the proceeds of any transfers and held that they had the right to use the proceeds for their personal consumption so far as might turn out to be necessary. We are of the opinion that this is a correct view, because the provisions of the will are not that the ultimate taker shall in any event have the property in its original or reinvested form, but that he or it shall have such thereof as the legatee owns, each at the time of his death; so that to give the provision as to ownership in the legatees an interpretation which will make it of substantial effect, instead of one which would strike it out or disregard it, the construction adopted by the chancellor must be allowed.

Affirmed.